Filed 9/12/22 P. v. Campos-Cervantes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOEL ANTHONY CAMPOS-CERVANTES, <br><br> Defendant and Appellant. | H049194 <br> (Monterey County <br> Super. Ct. No. 20CR006576) |

Following a jury trial, defendant Joel Anthony Campos-Cervantes was convicted of inflicting corporal injury on his girlfriend and violating a criminal protective order. Campos-Cervantes argues that the trial court erred by: (1) admitting evidence of prior and subsequent uncharged incidents of domestic violence; and (2) allowing the presentation of evidence of his parole status. Sentenced to the upper term of four years in prison, he also contends that he is entitled to a remand for resentencing due to the passage of Senate Bill No. 567 (2021-2022 Reg Sess.).

We conclude that any error at trial or in sentencing with respect to postjudgment ameliorative changes in the law was harmless. We therefore affirm the judgment.

**I.       BACKGROUND**

The Monterey County District Attorney, in the operative amended information, charged Campos-Cervantes with corporal injury to an intimate partner (Pen. Code, § 273.5, subd. (a)[1]; count 1), and two misdemeanor offenses—annoying telephone calls (§ 653m, subd. (b); count 2) and violation of a criminal protective order (§ 166, subd. (c)(1); count 3). The matter proceeded to trial on May 3, 2020.

## A.    *In Limine Matters*

The trial court heard motions in limine on the first day of trial. Among the motions was Campos-Cervantes's request to exclude any evidence of prior domestic violence under Evidence Code section 1109.[2] Campos-Cervantes objected to the vagueness of the People's proffer that Doe would testify that Campos-Cervantes had been violent with her "too many [times] to count," but the trial court found her testimony would be admissible under Evidence Code section 1109. The court also allowed testimony regarding two post-offense instances of violence.

Campos-Cervantes also moved to exclude any reference to his parole status or prior time in prison in recordings of certain phone calls he made to Doe from jail. The trial court ultimately admitted the unredacted jail calls over Campos-Cervantes's continuing objection.

## B.    *Trial Evidence*

### 1.    *The Offense Conduct*

Jane Doe testified at trial. On July 26, 2020, Doe and Campos-Cervantes, with whom she was in a dating relationship, had been having drinks at the Dust Bowl, a bar in Monterey. They left in Doe's Honda; Doe was driving and Campos-Cervantes was in the front passenger seat. While arguing, Doe hit Campos-Cervantes in the chest with her

---

[1] Undesignated statutory referenced are to the Penal Code.

[2] Section 1109 provides that "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a)(1).)

2

open hand. Campos-Cervantes struck back, hitting her in the mouth with his closed fist. He continued hitting her—her mouth, her cheek, her eyes.

After his first blow, Doe, already bleeding, told Campos-Cervantes she was going to call the police. Campos-Cervantes pulled the emergency brake to stop the car and tried at first to jump out as it was still in motion; Doe held him by the back of his clothing to keep him from doing so. When the car stopped, he did not immediately get out and instead resumed hitting Doe. After hitting Doe five or six times, Campos-Cervantes got out, called Doe a bitch, and spit in her face.

Campos-Cervantes initially walked away from the car; when Doe saw him start to walk back, she drove off to her sister's house. Doe's sister called 911, and Doe reported the assault to an officer who came to her sister's residence. While at her sister's residence, Doe received threatening text messages from Campos-Cervantes.

Campos-Cervantes's attack left Doe with swollen lips, swelling around her right eye and redness and bruising under the eye, and swelling to her left eyebrow area. The injury to her right eye resulted in blurry vision for two months, with some blurriness remaining thereafter.

Campos-Cervantes was arrested on August 5, and then released on August 7. Doe received more than 30 phone calls from Campos-Cervantes when he was in jail. Upon his release, he was subject to a restraining order prohibiting contact with Doe. Nevertheless, he met with Doe a number of times, the first time about four hours after his release.

Prior to the August 14 preliminary hearing in this case, Doe met with Campos-Cervantes at his request. Campos-Cervantes told Doe what to say at the preliminary hearing. Also in August, Campos-Cervantes sent Doe a Snapchat message which she felt was threatening. The message was a video of him pointing a gun at the camera, from an account named "Snitching Prohibited." At the preliminary hearing, Doe testified that Campos-Cervantes only shoved her in self-defense and accidentally scratched her lip

3

with his fingernail. Her testimony at the preliminary hearing differed from what she had told her sister and the police the day of the incident. At trial, Doe stated that she testified untruthfully at the preliminary hearing because she was afraid for her safety.

On September 5, 2020, Doe and Campos-Cervantes were in Doe's vehicle in an empty parking lot at night. A deputy sheriff with the Monterey County Sheriff's Office was doing a patrol and came across Doe's car. The deputy sheriff conducted a records check and discovered that there was a protective order in place against Campos-Cervantes. He asked Doe if she was aware of the protective order, and she stated that she knew of it. The deputy then took Campos-Cervantes into custody for violation of the protective order and transported him to jail.

After the September arrest of Campos-Cervantes and his release later that month, Doe began receiving threatening videos and messages via Facebook: when Doe did not respond to his newest request to meet and had posted a video of her with her new boyfriend on her Snapchat account, she received a video via Facebook Messenger with images of firearms and a message that Doe's new boyfriend "didn't want . . . no smoke."

### 2.    *Uncharged Acts Evidence*

Doe testified that Campos-Cervantes had been violent with her approximately 20 times before the July 26 altercation. She stated that she did not report them because she was afraid of the consequences Campos-Cervantes would suffer from her reporting the abuse; she also said that she tried once but that Campos-Cervantes grabbed her phone and stopped her.

Doe also testified about two further acts of violence that occurred after the July 26 altercation. In the first such episode, at some point between August 5 and September 5, 2020, she and Campos-Cervantes went again to the Dust Bowl. While in the parking lot, Campos-Cervantes struck Doe, bit her face, pushed her, and pulled her by her hair. Campos-Cervantes then made Doe drive him home. She got out of the car and tried to run to his house to tell his family to keep him away from her, but he caught up and forced

4

her inside the house. Campos-Cervantes's family told him he needed to let Doe leave because there was a court order, but he refused.

When Campos-Cervantes was released after his second September arrest, his mother drove him to Doe's house. Doe was dressed up, and Campos-Cervantes pushed her against a wall and tried to rip her shirt.

### 3. *Defense Evidence*

Maria Silva, the mother of Campos-Cervantes, testified on his behalf. She described picking him up in the aftermath of the July 26 incident. He was disheveled and had visible injuries to his face and neck. She also recounted an incident in which Campos-Cervantes appeared to have a handprint on his face following an argument with Doe, who threw an object at Campos-Cervantes, missed him, but broke a window instead. Silva was present in late September when Campos-Cervantes went to Doe's home to collect some belongings upon his release from his September arrest. Silva observed the entirety of their interaction and denied that Campos-Cervantes grabbed or struck Doe.

In under two hours, the jury returned a verdict finding Campos-Cervantes guilty on counts 1 and 3 and not guilty on count 2. The trial court thereafter sentenced Campos-Cervantes to the upper term of four years in a state prison.

Campos-Cervantes timely appealed.

## II. DISCUSSION

Campos-Cervantes argues that the trial court prejudicially abused its discretion under Evidence Code section 352 by admitting evidence of prior crimes, specifically (1) uncharged incidents of domestic violence and (2) Campos-Cervantes's prior incarceration and parolee status.[3] He further asserts that he is entitled to remand for

---

[3]The jury did not hear evidence of the particular offense or offenses underlying the prior prison commitment.

resentencing under section 1170, subdivision (b), as amended postjudgment by Senate Bill No. 567.

**A.    *Evidence Code Section 352 and Prior Acts Evidence***

Evidence of prior criminal acts is generally inadmissible to show a defendant's propensity to commit such acts. (Evid. Code, § 1101, subd. (a).)  But "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a)(1); see also *People v. Baker* (2021) 10 Cal.5th 1044, 1089; *People v. Brown* (2011) 192 Cal.App.4th 1222, 1232.)

Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  We review the trial court's exercise of discretion for abuse.  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)  A trial court's exercise of discretion under section 352 will not be overturned "in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314 (*Jennings*).)

**1.    *Prior Uncharged Acts of Domestic Violence***

"Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis' " and such offenses are admissible only if they have substantial probative value. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).)  When engaging in a "careful weighing process under section 352 . . . trial judges must consider such factors as [the evidence's] nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against

6

the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).) Nevertheless, the determination is "entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*Id*. at pp. 917-918.)

Campos-Cervantes, as a threshold matter, argues that the trial court did not specifically state the factors it used to balance probative value and undue prejudice. But in evaluating whether a trial court conducted a section 352 analysis, a reviewing court can "infer an implicit weighing by the trial court on the basis of record indications *well short* of an express statement." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168 (*Villatoro*).) Here, the court expressly acknowledged its "need to do a balancing under Evidence Code [s]ection 352."

We will first consider whether the trial court abused its discretion in admitting the incidents following the July 26 offense. Campos-Cervantes does not dispute that the two subsequent incidents were both close in time to the charged offense and similar factually. He argues, however, that Doe did not report the incidents and there were no witnesses, so the degree of certainty that they happened is low. He also contends the description of the incidents was graphic to a degree that it would have prejudiced the jurors.

Ordinarily, " ' "[t]he principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." ' " (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.) It is undisputed that the subsequent incidents were similar to the charged offense in that they involved physical abuse of Doe. But even if superficial dissimilarities could otherwise be deemed significant, the trial court could reasonably conclude on this record that the later uncharged acts were highly probative of a propensity to violently coercive control relevant to Doe's changing testimony. This renders these other incidents highly probative in that a finder of fact could conclude they

7

reflect a pattern of abuse demonstrating Campos-Cervantes's propensity to engage in similar conduct to that charged. (See *People v. Merchant* (2019) 40 Cal.App.5th 1179, 1193; see also *Jennings*, *supra*, 81 Cal.App.4th at p. 1315.)

We acknowledge that "the probative value of 'other crimes' evidence is increased [when there are] independent sources of evidence . . . ." (*Falsetta, supra*, 21 Cal.4th at p. 917.) Here, the only evidence of the commission of the subsequent incidents is Doe's testimony. Although this weighs against admissibility, it is only one factor to be considered.

Another relevant factor is "the burden on the defendant in defending against the uncharged offense." Campos-Cervantes had notice of the nature of the allegations and an opportunity to cross-examine Doe. He also had the opportunity to defend himself by calling as witnesses his family members whom Doe identified as having been present at the time. Further, both Doe's and Campos-Cervantes's credibility could be assessed by the jury in determining how much weight to give the testimony. (*People v. Jones* (1990) 51 Cal.3d 294, 314 ["[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends."].)

With regard to Campos-Cervantes's contention that the graphic nature of the testimony as to the other incidents would cause prejudice, the testimony describing those other acts was no more graphic or inflammatory than the testimony and photographic evidence regarding the July 26 offense. This mitigated the potential for prejudice from "the jury's passions [being] inflamed by the evidence of defendant's uncharged offenses." (*Ewoldt*, *supra*, 7 Cal.4th at p. 405.)

It was within the trial court's discretion to balance the probative nature of the evidence of subsequent incidents with its potential prejudice pursuant to Evidence Code section 352, so long as that discretion was not exercised in an arbitrary, capricious, or patently absurd manner. (See *Jennings*, *supra*, 81 Cal.App.4th at p. 1314.) In light of the

record, we cannot state that the probative value of the uncharged subsequent acts was substantially outweighed by the risk of undue prejudice under Evidence Code section 352 such that the trial court exercised its discretion in an "arbitrary, capricious, or patently absurd manner."

We view the uncharged acts prior to July 26 differently. With regard to Doe's claim of approximately 20 occasions when Campos-Cervantes "was violent toward [her]," the People proffered no detail by which the trial court could meaningfully exercise its discretion under Evidence Code section 352, acknowledging that they did not have any "specific information as to what those instances entailed and when they occurred," except that there had been "too many to count." Campos-Cervantes specifically objected to the vagueness of this proffer. It is difficult to see how the trial court could have engaged in the required balancing of probative value and prejudice regarding the prior acts without any detail other than the People's initial estimate that the acts were too numerous to count. The trial court's suggestion that Campos-Cervantes could adequately discover the details in the presence of the jury via cross-examination is, as a practical matter, difficult to reconcile with a trial judge's fundamental gatekeeping role under Evidence Code section 352. (See, e.g., *Moore v. Mercer* (2016) 4 Cal.App.5th 424, 443 ["traditional gatekeeper role"]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 828.) We are accordingly unable to "infer an implicit weighing by the trial court" on this record. (See *Villatoro*, *supra*, 54 Cal.4th at p. 1168.) Admitting Doe's conclusory assertion of 20 prior acts—without requiring a more specific proffer or a hearing outside the presence of the jury under Evidence Code section 402[4] as to the particulars was an abuse of discretion.

---

[4] Doe in fact testified at such a hearing that same day, in response to the People's concern that she would refuse to testify before the jury.

Given the other record evidence, however, the trial court's error was harmless. (See *People v. Mullens* (2004) 119 Cal.App.4th 648, 659 (*Mullens*) [applying standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) to error under Evid. Code, § 352].) Absent Doe's terse claim of 20 prior instances of abuse, the jury would still have been left with her significantly more detailed testimony as to the two uncharged acts subsequent to July 26, 2020. These independently admissible prior acts demonstrated Campos-Cervantes's propensity for frequent and coercive violence, which was further underscored by the evidence of Campos-Cervantes's menacing social media communications. Given Doe's testimony as to those subsequent acts, their closeness in time to the July 26 incident, and their gravity, even a jury that might have been tempted to disregard the court's standard instructions and speculate as to the character of the 20 prior acts or find probative a conclusory assertion of this type would likely infer that these incidents were insufficiently serious to warrant further exposition by either party. Given the specific testimony heard by the jury regarding the post-offense conduct, which occurred close in time to the charged acts, we see no "reasonabl[e] probab[ility]" that "a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836; *Mullens*, *supra*, 119 Cal.App.4th at p. 659.)[5]

**B.**     *Evidence of Parole Status*

Recordings of jail calls by Campos-Cervantes to Doe on August 5, 2020, were admitted as statements of a party opponent and statements against interest. Campos-Cervantes unsuccessfully moved pursuant to Evidence Code section 352 to redact the calls of any references to Campos-Cervantes having been in prison or on parole.

---

[5] Our conclusion that the trial court's error was harmless forecloses Campos-Cervantes's further contention that the error amounted to a violation of due process. "[G]enerally, violations of state evidentiary rules do not rise to the level of federal constitutional error." (*People v. Benavides* (2005) 35 Cal.4th 69, 91.)

The recordings reveal Campos-Cervantes telling Doe that he did not want to "go back to prison." Doe continued to receive phone calls from Campos-Cervantes when he was in jail, and she testified that she accepted the calls because she felt bad that he was incarcerated. She responded "yes" when asked whether "[e]verything he was telling you about not wanting to go back to prison . . . play[ed] into you feeling bad?" Doe stated that, although she was not in love with Campos-Cervantes, she "loved him as a friend." Campos-Cervantes lamented to Doe: "I'm going back to prison. They might give me a prison prior. You need to let them know that you are not pressing charges. You need to not put this on me." Instructing Doe to contact the police and "tell them something . . . to . . . try to get me . . . out of here[,]" Campos-Cervantes said, "I don't want to go back to prison." Doe responded, "I know you don't and I don't want you to."

Campos-Cervantes raised his parole status in the third jail call to Doe. He stated that he "had like less than a year left on . . . parole, . . . and I might have to re-start it all over again[.]" Later in that conversation with Doe, he warned that the judge "could just . . . like oh, he's been to prison, oh he's on parole, well, send him back to prison. That's, that's all it could take . . . ."

The overall tenor of the jail calls supported the trial court's express determination that Campos-Cervantes's references to his prison history and parole status were probative of the reasons for Doe's exculpatory testimony at the preliminary hearing. Taken as a whole, the calls arguably supported the inference that the emphasis by Campos-Cervantes on the potential sentence-enhancing effect of his prison history and parole status were calculated to lend greater urgency to his entreaties that she recant. They were therefore probative of an intent to manipulate Doe's sympathies or fears and of her susceptibility to such manipulations. The statements regarding his time in prison and parole status were consequently probative of why Doe testified in his favor at the preliminary hearing.

"There is little doubt," however, that "exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering

11

suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580 (*Harris*).)  Campos-Cervantes cites several cases that discuss the prejudicial impact of a defendant's parole status or prior conviction.  But as he acknowledges, those cases involved motions for mistrial where there had been no antecedent ruling by the trial court on the admissibility of testimony about the defendant's current or prior carceral status. (*Harris*, *supra*, 22 Cal.App.4th at pp. 1580-1581; *People v. Valdez* (2004) 32 Cal.4th 73, 122-123 (*Valdez*);  *People v. Bolden* (2002) 29 Cal.4th 515, 554-555 (*Bolden*).) Accordingly, the trial court in each case never performed the threshold balancing of probative value and undue prejudice.  Moreover, in none of these cases did the post hoc denial of the motion for mistrial constitute reversible error.  (*Harris*, *supra*, 22 Cal.App.4th at pp. 1580-1581; *Valdez*, *supra*, 32 Cal.4th at pp. 122-123; *Bolden*, *supra*, 29 Cal.4th at pp. 554-555.)

Campos-Cervantes attempts to distinguish this aspect of these cases by asserting that the evidence in this case was not overwhelming and undisputed as he contends it was in the cited cases.  But while relative strength of other evidence may be relevant to a determination whether error, once established, was harmless, it is less relevant as to the antecedent question of whether the admission of unredacted jail calls was erroneous, i.e., whether the unduly prejudicial nature of his parole status and prior prison history substantially outweighs its probative value. Moreover, because the other evidence at trial includes uncharged acts specifically admitted to establish criminal propensity under Evidence Code section 1109, we do not accept the premise that the totality of the other evidence on this record was so underwhelming or that the relative prejudice flowing from Campos-Cervantes's references to his prison history and parole status was so substantial.

The trial court's administration of a limiting instruction to the jury also mitigated the risk of undue prejudice from the evidence.[6]  (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.)

We therefore conclude the trial court did not abuse its discretion by admitting evidence of Campos-Cervantes's parole status and incarceration.[7]

## C.    *Resentencing*

Sentenced to the upper term of four years, Campos-Cervantes contends that he is entitled to a remand for resentencing due to the passage of Senate Bill No. 567.  Senate Bill No. 567, effective as of January 1, 2022, "amended [Penal Code] section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500, fn. omitted (*Flores*); § 1170, subd. (b).)  The statute now provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[8] (§ 1170, subd. (b)(2).)  This change applies "retroactively to all cases not yet final as of January 1, 2022." (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*).)

---

[6] The trial court instructed the jury that evidence that Campos-Cervantes had been to prison or was on parole should be considered for the sole purpose of demonstrating Doe's state of mind.

[7] Because we have found only a single error in the admission of evidence, we do not reach Campos-Cervantes's claim of cumulative error.

[8] The statute also states, in relevant part, that "[e]xcept where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170, subd. (b)(2).)

Since the amendments wrought by Senate Bill No. 567 went into effect, a handful of published decisions have addressed the framework for evaluating harmless error arguments in retroactively applying the statutes. In *Flores*, the court held that " '[i]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless." (*Flores*, *supra*, 75 Cal.App.5th at p. 500.)

In *Lopez*, however, the court adopted a two-step approach to evaluating prejudice. At the first step, the court applied a broader inquiry than was prescribed in *Flores*, by considering whether "beyond a reasonable doubt . . . a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury[.]" (*Lopez*, *supra*, 78 Cal.App.5th at pp. 465-467, fn. 11.) If so, then the error is not prejudicial. (*Ibid.*) If not, then the analysis proceeds to the second step. At the second step, the reviewing court determines whether it is reasonably probable, "that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only" the subset of aggravating factors surviving the reviewing court's first-step *Chapman*[9] inquiry, "rather than all of the factors on which it previously relied." (*Id.* at p. 467, fn. 11.) If not, "then it is clear that remand to the trial court for resentencing is necessary." (*Ibid.*)[10]

---

[9] The case of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) provides a standard for harmless error analysis that "covers errors involving 'violations of the federal Constitution' and 'requires reversal unless the error is harmless "beyond a reasonable doubt." ' " (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110 (*Zabelle*).)

[10] Most post-*Lopez* published decisions have adopted some version of *Lopez*'s two-step inquiry. (See *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982; *Zabelle*,

14

On this record, we need not stake out a position on the *Flores/Lopez* continuum, because we conclude that the trial court's inability to anticipate Senate Bill No. 567 and its application here was harmless beyond a reasonable doubt, even under the more exigent standard of *Lopez*. Had the jury been called upon to decide beyond a reasonable doubt whether the aggravating factors on which the trial court relied were true, the record supplies no reason to doubt the resolution of those factors.

As arguably the most significant of the aggravating factors, the trial court found that Campos-Cervantes had sent threatening videos to Doe in which he brandished firearms. Evidence of this factor was in fact before the jury, undisputed and to all appearances undisputable: both videos were admitted into evidence, authenticated by Doe without objection or rebuttal; the first—at or near the time of the preliminary hearing—depicted Campos-Cervantes pointing a firearm at the viewer and was sent from an account titled "Snitching Prohibited"; the second—on the heels of Doe's failure to respond to Campos-Cervantes's overtures and her Snapchat posting about her new boyfriend—expressly warned over images of firearms that the boyfriend "didn't want . . . no smoke." On this record, the truth of this factor does not appear susceptible of reasonable doubt.

The remaining aggravating factors on which the trial court relied were the increasing severity of Campos-Cervantes's criminal convictions; his prior prison term; and his prior unsatisfactory performance on probation and parole. Certain of these are

*supra*, 80 Cal.App.5th at p. 1113; *People v. Dunn* (2022) 81 Cal.App.5th 394, 409-410 [adopting the *Lopez* framework subject to a reduction of the burden on the first step of the test]; but see *People v. Salazar* (2022) 80 Cal.App.5th 453, 464-465; *People v. Flowers* (2022) 81 Cal.App.5th 680, 686 (*Flowers*) [concluding that record " 'clearly indicate[s]' " that trial court would not impose a more favorable sentence upon theoretical reversal for resentencing because several of the factors relied on by the trial court were properly before it and the trial court found no mitigating circumstances].)

exempt from jury determination under Senate Bill No. 567, because Campos-Cervantes has neither a statutory nor constitutional right to a jury trial as to the fact of a "prior conviction." (§ 1170, subd. (b)(3); *People v. Towne* (2008) 44 Cal.4th 63, 79 (*Towne*).) The California Supreme Court has instructed us to reject "narrow or literal" interpretation of " 'the fact of a prior conviction,' " extending this exception to the jury right on sentencing factors to " 'the nature or basis of a . . . prior conviction,' " and "the circumstance that a defendant was on probation or parole at the time of the offense or has served a prior prison term." (*Towne*, *supra*, 44 Cal.4th at p. 79, italics omitted.) Moreover, although Campos-Cervantes places great weight on the trial court's acknowledgment of progress on parole, he acknowledged in his sentencing memorandum that both times he was granted probation in a felony case, the court ultimately revoked probation and committed him to prison. The fact of his commission of the instant offenses while on parole following a prior prison commitment was also, as discussed *ante*, before the jury and undisputed.

We are mindful that where "a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840 (*Sandoval*).) We can accordingly conceive of circumstances where the relative seriousness of a defendant's criminal history or performance on probation or parole may be subject to reasonable doubt.

Here, however, there appears to be no question that the July 26 assault represents an escalation from an adult criminal history that, as Campos-Cervantes himself argued in his sentencing memorandum, did not include "any prior convictions for violence of any kind." Campos-Cervantes on appeal makes no contrary argument about the character of his convictions or his performance on probation or parole. He instead relies on the fact that the jury did not consider evidence relating to his prior convictions. But the weight of

16

authority supports our independent consideration of criminal conviction information from a probation report—although never considered at trial—in the *Chapman* inquiry. (See *Flores*, *supra*, 75 Cal.App.5th at p. 501 [relying on probation report for proof beyond a reasonable doubt of defendant's criminal history and unsatisfactory performance on probation, where instant offense was committed during probation term]; *Flowers, supra*, 81 Cal.App.5th at p. 685 [relying on probation report]; cf. *Sandoval*, *supra*, 41 Cal.4th at p. 840 [in reviewing for harmlessness, court should consider that factual record might not have been the same had aggravating circumstances been charged and tried to the jury].) We therefore conclude that a jury would likewise find this factor—the increasing severity of his convictions—beyond a reasonable doubt.

Finally, as to Campos-Cervantes's contention that remand is warranted on the ground that "nothing in the record . . . indicate[s] that the trial court would have reached the same result applying the amended statute," we note that the trial court in imposing the upper term expressly found that there were no factors in mitigation to counterbalance the factors in aggravation, "particularly in the context of this particular case." Given our conclusions as to the aggravating factors on which the trial court relied, the court's determination that there were no mitigating factors leaves no reasonable probability that its exercise of sentencing discretion under current law would be more favorable to Campos-Cervantes.

### III.    DISPOSITION

The judgment is affirmed.

17

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P.J.



_____
GROVER, J.



*People v. Campos-Cervantes*
H049194